252

## HUMBERT, ESTATE OF, In Re

Probate Court, Montgomery Co

Decided August 17, 1938

George R. Murray, Dayton, for petitioner.
Cooper & Lunsford, Dayton, for estate.

## OPINION

By WISEMAN, J.

On April 21, 1938, Bruce L. Humbert, a resident of Montgomery county, state of Ohio, died intestate, leaving a widow surviving. The appraisers, in Schedule G, allowed the widow Four Hundred ($400) Dollars in personal property and Two Thousand ($2,000) Dollars additional, as her year's allowance. Subsequently, there was filed a petition for review of and exceptions to the allowance to the widow by Mildred Muscio, who represents that she is the mother and next friend of Bruce S. Humbert, who is a son of the decedent, and in said petition alleges that said Bruce S. Humbert was born on May 29, 1922, at Indianapolis, Indiana, and was fifteen (15) years of age at the time of the death of Bruce L. Humbert;
that the parentage of said child has not been legally determined but that the decedent herein always furnished support for Bruce S. Humbert and recognized him as his son; that the appraisers of the estate duly allowed to the widow the sum of Twenty Four Hundred ($2,400) Dollars, in property and money for her support for one (1) year as shown by said inventory, but that said appraisers have failed to apportion the year's support between the widow and Bruce S. Humbert, in accordance with §10509-74 GC. The petitioner prays that said allowance may be reviewed and that the ' sum of Twenty Four Hundred ($2,400) Dollars be apportioned between the widow and Bruce S. Humbert as the court may determine. To this petition there has been filed a general demurrer on the ground "that it appears on the face of the petition that the facts therein contained do not constitute a cause of action in favor of this plaintiff and against this defendant."

The pleadings raise a most interesting question and present a case of first impression in the state of Ohio. A demurrer having been filed to the petition, all facts contained therein are regarded as true. The question for the court to determine is whether or not, under the law of Ohio, an illegitimate child is entitled to a portion of the year's allowance set off to the widow, wherein the paternity of said child has never been legally established and the father has never entered into a marriage relation with the mother of said child, even though the facts show that the father recognized the child as his son and provided for his support. Counsel for the petitioner concedes that Bruce S. Humbert does not inherit from his father under the statutes of descent and distribution, but contends that since §10509-74 GC was enacted for the purpose of providing support and maintenance to the widow and minor children of the deceased husband and father for one (1) year after his death, the term "children," as used in that section, should be construed to embrace illegitimate as well as legitimate children of the decedent.

The term "child" at common law, and later as used in the statutes of descent and distribution, was construed to mean a legitimate child. Gibson v McNeely, 11 Oh St 131, 136.

In the case of Creisar v State, 97 Oh St, 16, the court on page 18, say as follows:

"At common law wherever such terms have been employed they have been held to

apply only to those children who are legitimate, and whether utilized in the statutes of descent and distribution or in connection with criminal offenses, unless such terms have been so enlarged as to include illegitimate offspring, they have invariably been held as applicable only to children born in lawful wedlock."

In Volume 3, Ruling Case Law, page 973, the text reads as follows:

"Statutes, however, which provide generally for the distribution of property of a deceased person among certain classes without mentioning illegitimates, are construed to refer to legitimates only, and this is so although the particular statute of distribution was borrowed from the civil law. Consequently, if the words 'child' or 'children' are used therein, legitimate children are meant."

In the case of **Owens v Humbert, Exrx, 5 Oh Ap p 312,** the court was required to construe the meaning of the words "child or other relative" as used in §10581 GC. The court, on page 317, say:

"It therefore follows that the only inheritable right a bastard has to take property is made so by statute. Having reached this conclusion, we hold that the words 'child or other relative,' as used in the statute now under consideration, are within the well-known and recognized rule of construction that prima facie the words 'child' or 'children' when used in the statute means legitimate child or children; that bastards are not within the meaning of the term, and that child or children, or any other terms of kindred when used in the statute, mean legitimate children or kindred only."

It is contended that a broader interpretation should be given to the term "children" as used in §10509-74 GC than is given to that term as used in the general statutes of descent and distribution, for the reason that this statute relates to support and not to inheritance. While this contention has some force, this court is of the opinion that the Legislature of our state has not yet declared it to be the policy of the state of Ohio to place an illegitimate child in the same legal category as one born in lawful wedlock. At common law, an illegitimate child was filius nullius and therefore kin to nobody, having no ancestor from whom any inheritable blood could be derived. The severity of the rules of the ancient common law have been relaxed by the enactment of statutes in the several states. In Ohio, it has been provided that bastards "shall be capable of inheriting or transmitting inheritance from and to the mother, and from and to those from whom she may inherit, or to whom she may transmit inheritance, in like manner as if born in lawful wedlock." Sec 10503-14 GC. It is further provided that "When by a woman a man has one or more children, and afterwards intermarries with her, such issue, if acknowledged by him as his child or children, will be legitimate." Sec 10503-15 GC. Our state has gone as far as any state in the Union in providing for the rights of an illegitimate child in relation to its mother. It has not conferred any rights of inheritance on an illegitimate child in relation to its father unless the father has afterwards entered into a marriage relation with the mother and acknowledged the child to be his own. The underlying reason for this distinction in the law is due to an unalterable physical fact. The statutory law in the several states, and in England, early recognized the relationship existing between the mother and her illegitimate child. "There doth not exist among men a relation so near and certain as that of mother and child." In all cases, the mother of said child is sufficiently certain although the father is not. The same imperative reason which has persuaded the courts to interpret the words "child" or "children" in our statutes on inheritance to mean only a legitimate "child" or "children" applies with equal force to the term "children" as used in §10509-74 GC which provides for a year's allowance to the widow and children of the deceased husband. This section is closely related to the general sections of descent and distribution. This court, therefore, is of the opinion that in the enactment of this section, the term "children" is used in the same sense as the term "children" in the general sections of descent and distribution and is intended to embrace only legitimate children.

The fact that §13008 GC makes it a criminal offense for the father to fail, neglect, or refuse to provide for a legitimate or illegitimate child under sixteen years of age does not require of the court a different interpretation of the word "children" in §10509-74 GC than is given to that term in other sections in our Probate laws. Sec 13008 GC is a criminal section under which the father of an illegitimate child may be prose-

cuted, in which the paternity of the child is required to be established, which action would abate upon the death of the father. **Sec 13008 GC** is not in **pari materia** with and bears no relation to the general sections of descent and distribution and year's allowance which form part of our probate code.

: In this case, the paternity of the child has never been established. The fact that the decedent recognized Bruce S. █ Humbert as his child and provided for his support during life does not give Bruce S. Humbert any right of support after the father's death. This court is of the opinion that it would not be in accord with sound public policy to permit an illegitimate child, after the death of the father, to assert any right for support under §10509-74 GC. It would be an extremely severe and a very questionable policy that would allow a living woman to swear the paternity of her illegitimate offspring upon a dead man. If any relief is to be granted to an illegitimate child under such a state of facts, it must come from the legislature and not from the courts.

The court concludes that the petitioner is not entitled to an apportionment of the Twenty-Four Hundred ($2,400) Dollars set off by the appraisers to the widow as her year's allowance. The demurrer will be sustained.